UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL B. KAPLAN and KIM C. KAPLAN,<br><br>Plaintiffs,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC, a Delaware Limited Liability Company; and DOES 1 through 30, inclusive,<br><br>Defendants. | Case No.: 21-CV-857 TWR (AGS)<br><br>**ORDER (1) GRANTING PLAINTIFFS' MOTION TO REMAND; AND (2) REMANDING ACTION TO THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**<br><br>(ECF No. 6) |

Presently before the Court is Plaintiffs Paul B. and Kim C. Kaplan's Motion to Remand Complaint ("Mot.," ECF No. 6), as well as the Response in Opposition to the Motion ("Opp'n," ECF No. 10) filed by Defendant BMW of North America, LLC ("BMW") and Plaintiffs' Reply in Support of their Motion ("Reply," ECF No. 14).[1] The Court heard oral argument on September 22, 2021. (*See* ECF No. 17.) Having carefully considered the Parties' arguments, evidence, and the relevant law, the Court **GRANTS**

---

[1] Plaintiffs' Reply was filed a week late, most likely under the briefing deadlines set by the Southern District of California's Civil Local Rules, rather than the superseding deadlines set by this Court's Standing Order for Civil Cases. The Court finds the delay was due to excusable neglect because there is no danger of prejudice or indication of bad faith in the minor delay. *See Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004) (listing the excusable neglect factors). Although the Court properly may consider Plaintiffs' untimely Reply, the arguments it presents do not alter the Court's reasoning or conclusions.

1

Plaintiffs' Motion to Remand and **REMANDS** this action to the Superior Court of California, County of San Diego.

## BACKGROUND

On March 30, 2021, Plaintiffs filed a Complaint against BMW in the Superior Court of California, County of San Diego. (*See generally* ECF No. 1-4 ("Compl.").) In their Complaint, Plaintiffs allege that they purchased a new 2012 BMW X3, VIN 5UXWX7C56CL737601 (the "Vehicle") from BMW of Encinitas on December 30, 2011. (*See id.* ¶ 9.) They made a $50,000 cash down payment, received a $500 rebate, and financed $11,648.14. (*See id.*) Including all associated fees, the total amount payable on the purchase of the Vehicle was $62,261.68. (*See id.*) Although BMW made express and implied warranties regarding the Vehicle, (*see id.* ¶¶ 10–11), "[t]he Vehicle was delivered to Plaintiffs with serious defects and nonconformities under the warranty and developed other serious defects and nonconformities under BMW's warranty." (*See id.* ¶ 12; *see also id.* ¶¶ 17–39.) Plaintiffs therefore allege three causes of action for violation of the Song-Beverly Consumer Warranty Act (the "Act"), California Civil Code §§ 1790, *et seq.*: (1) breach of express warranty, (2) breach of implied warranty, and (3) failure to service in violation of Section 1793.2. (*See* Compl. ¶¶ 41–81.)

On May 3, 2021, BMW filed an Answer in state court, (*see generally* ECF Nos. 1-3, 2), and, on the same day, a Notice of Removal in this Court, alleging diversity subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a). (*See generally* ECF No. 1 ("NOR").) Specifically, BMW alleges that "[c]omplete diversity . . . exists," (*see id.* ¶ 15; *see also id.* ¶¶ 10–15), and that the amount in controversy exceeds $75,000 including the civil penalties under the Act and prospective attorneys' fees. (*See id.* ¶ 19; *see also id.* ¶¶ 16–19.) On June 2, 2021, Plaintiff filed the instant Motion, arguing that "Defendant BMW . . . has not plausibly alleged the amount in controversy exceeds $75,000.00." (*See* Not. at 2.)

## LEGAL STANDARD

"The right of removal is entirely a creature of statute and a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress."

*Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32 (2002). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. *See* 28 U.S.C. § 1441(a). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Removal is proper when a case originally filed in state court presents a federal question or where there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332(a). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

The party invoking the removal statute bears the burden of establishing that federal subject-matter jurisdiction exists. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988). It is "presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (quoting *Renne v. Geary*, 501 U.S. 312, 316 (1991)), and courts "strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988)); *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985)). Therefore, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566 (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).

## ANALYSIS

BMW removed Plaintiffs' Complaint from Superior Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). (*See, e.g.*, NOR ¶ 6.) Through the instant Motion, Plaintiffs seek to remand their action to Superior Court. (*See generally* Mot.; ECF No. 6-1 ("Mem.").) Plaintiffs do not contest that there is complete diversity of citizenship among the Parties. (*See generally id.*; *see also* Opp'n at 6.) Instead, Plaintiffs contend that BMW

///

has failed to meet its burden of establishing that the amount in controversy exceeds $75,000. (*See generally* Mot.)

Federal courts have diversity jurisdiction "where the amount in controversy" exceeds $75,000, and the parties are of "diverse" state citizenship. *See* 28 U.S.C. § 1332(a). A defendant seeking to remove a case to federal court must provide only a "short and plain statement of the grounds for removal." *See* 28 U.S.C. § 1446(a). Consequently, "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014). But "[i]f the plaintiff [or the court] contests the defendant's allegation, § 1446(c)(2)(B) instructs: '[R]emoval . . . is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *See id.* at 88 (third and fourth alterations in original).

"[T]he plaintiff can contest the amount in controversy by making either a 'facial' or 'factual' attack on the defendant's jurisdictional allegations." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (citing *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020)). "A 'facial' attack accepts the truth of the [defendant's] allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Id.* (alteration in original) (quoting *Salter*, 974 F.3d at 964). "A factual attack 'contests the truth of the . . . allegations' themselves," *id.* (alteration in original) (quoting *Salter*, 974 F.3d at 964), or "make[s] a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Id.* at 700 (citing *Salter*, 974 F.3d at 964; *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015)). "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the . . . jurisdictional threshold." *Id.* at 699 (citing *Ibarra*, 775 F.3d at 1197). "[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must

be reasonable ones." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (citing *Ibarra*, 775 F.3d. at 1199). "Both parties may submit evidence supporting the amount in controversy before the district court rules."[2]  *Harris*, 980 F.3d at 699 (citing *Salter*, 974 F.3d at 963; *Ibarra*, 775 F.3d at 1197).

"In determining the amount in controversy, courts first look to the complaint." *Ibarra*, 775 F.3d at 1197. "Generally, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). But "[w]here it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam). When a damages estimate is articulated in the complaint and not "repeated in the Prayer for Relief . . . , the complaint fails to allege a sufficiently specific total amount in controversy," and the preponderance of evidence standard applies. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007).

Here, Plaintiffs allege only that, "[i]ncluding all associated fees, the total amount paid or payable on the purchase of the Vehicle is $62,261.68." (*See* Compl. ¶ 9.) Plaintiffs do not plead that the amount in controversy exceeds $75,000. (*See generally id.*; *see also id.* at Prayer for Relief.) Rather, BMW makes certain assumptions—including that (1) the amount paid for the Vehicle is equal to the sales price in the contract, (2) there is no mileage offset, (3) a jury would award Plaintiffs the maximum civil penalty under the Act, and (4) Plaintiffs would be entitled to significant attorneys' fees, (*see* NOR ¶ 19; Opp'n at 8–16)—to establish that the amount in controversy exceeds $75,000. Because Plaintiffs have challenged those assumptions, however, the burden is on BMW to establish by a
/ / /

---

[2] To the extent Plaintiffs argue that BMW is precluded from proving up a mileage offset, civil penalties, and attorneys' fees in its Opposition, (*see* Reply at 1, 8), this argument is foreclosed by the approach outlined by the Supreme Court *Dart Cherokee*. *See* 574 U.S. at 87–88.

preponderance of the evidence that the amount in controversy exceeds $75,000. *See, e.g.*, *Dart Cherokee*, 574 U.S. at 88.

On the present record, the Court concludes that BMW has failed to establish that the assumptions it used in calculating an amount in controversy exceeding the $75,000 threshold are reasonable and supported by a preponderance of the evidence. Under the Act, "if the manufacturer . . . does not service or repair the goods to conform to the applicable express warranties . . . , the manufacturer shall . . . reimburse the buyer in an amount equal to the purchase price paid by the buyer, less that amount directly attributable to use by the buyer prior to the discovery of the nonconformity." Cal. Civ. Code § 1793.2(d)(1). BMW's first two challenged assumptions relate to this calculation. As for BMW's first assumption, it has introduced evidence establishing by a preponderance of the evidence that Plaintiffs actually paid $62,197.18 under the contract for the purchase of the Vehicle.[3] (*See* ECF No. 10-1 ("Oaks Decl.") ¶ 5; ECF No. 10-4 (payment history); *see also* Mem. at 6–9 (arguing that Defendant failed to introduce evidence of the amounts actually paid under the contract).)

BMW fails, however, to meet its burden as to the mileage offset. BMW first argues that the mileage offset is zero because "Plaintiffs allege that the Vehicle was delivered with such defects, effectively stating that such defects *existed at the time of sale*." (Opp'n at 13 (emphasis in original) (citing Compl. ¶ 43).) But "[w]hether the defects existed . . . at the time of sale is irrelevant" because "[t]he mileage offset is based on the buyer's use of the vehicle prior to the *buyer's discovery* of the nonconformity." *Cox v. Kia Motors Am., Inc.*, No. 20-CV-02380-BLF, 2020 WL 5814518, at *4 (N.D. Cal. Sept. 30, 2020) (emphasis in original) (citing Cal. Civ. Code § 1793.2(d)(1)). Here, Plaintiffs allege that they brought the Vehicle in for service twenty-one times between the purchase date and August 28, 2019. (*See* Compl. ¶¶ 17–37.) It is unclear from the face of the Complaint at what point

---

[3] In their Reply, Plaintiffs challenge the purchase contract on the ground that BMW failed properly to authenticate it. (*See* Reply at 2.) Even if this objection had merit, Plaintiffs do not challenge the payment history provided with BMW's Opposition.

Plaintiffs discovered the "nonconformity," (*see generally id.*); nonetheless, BMW randomly selects Plaintiffs' second service visit for a coolant issue, at which point the Vehicle had 9,922 miles, to calculate a mileage offset of $4,176.88. (*See* Opp'n at 13–14; *see also* Compl. ¶ 18.) At the hearing, BMW explained for the first time that it chose Plaintiffs' second service visit because a defendant is entitled to a reasonable number of repair opportunities under the law—at least two—before it is obligated to repurchase the vehicle. *See* Cal. Civ. Code § 1793.22(b). Plaintiffs responded that the offset, however, is calculated based on when the buyer first sought repair of the problem giving rise to the nonconformity. *See* Cal. Civ. Code § 1793.2(d)(2)(C). The Court is sympathetic to BMW's dilemma given Plaintiffs' identification of several nonconformities serviced on 21 separate occasions. Nonetheless, the burden is on BMW to provide at least some justification for the assumption underlying its offset estimate, and no reasonable justification was provided here.

Even if the Court were to accept BMW's proposed offset and resultant calculation of $58,020.30 in actual damages,[4] however, BMW fails to establish that the civil penalties and/or attorneys' fees awardable under the Act are more likely than not to exceed $16,979.71. As for the civil penalties, "[i]f the buyer establishes that the failure to comply was willful, the judgment may include . . . a civil penalty which shall not exceed two times the amount of actual damages." Cal. Civ. Code § 1794(c); *accord* Cal. Civ. Code §§ 1794(e)(1), (5). BMW contends that the maximum civil penalty is "at issue" for purposes of establishing the amount in controversy, (*see* Opp'n at 9–12), while Plaintiffs argue that BMW fails to establish that it is more likely than not either that a civil penalty

///

---

[4] Plaintiffs cite no authority to support their contention that, "[t]o accurately ascertain damages, the value of the Vehicle would need to be[] determined and deducted from the damages in this case." (*See* Mot. at 9; *see also* Reply at 1–2.) Additionally, because Defendants provide no basis for their exclusion, the Court declines to reduce the amount in controversy by an additional $6,900 for the manufacturer's rebate ($500), BMW Platinum Extended Vehicle Protection Plan ($3,400), BMW maintenance plan ($2,000), and BMW tire and wheel warranty ($1,000). (*See* Opp'n at 14.) In any event, the inclusion or exclusion of these items does not change the Court's final conclusion.

will be awarded or that the amount of such a penalty will put more than $75,000 at issue. (*See* Mem. at 10–13.)

"District courts in the Ninth Circuit are split on whether to include Song-Beverly Act civil penalties in calculations to assess the amount in controversy." *Ferguson v. KIA Motors Am. Inc.*, No. 2:20-CV-01192-KJM-DB, 2021 WL 1997550, at *3 (E.D. Cal. May 19, 2021) (collecting cases); *see also Modiano v. BMW of N. Am. LLC*, No. 21-CV-00040-DMS-MDD, 2021 WL 973566, at *3 (S.D. Cal. Mar. 16, 2021) (collecting cases revealing split within this District). The Court concludes that requiring the defendant to "make some effort to justify the assumption . . . appears more consistent with the general principle that where the state-court complaint does not specify a damage figure, the defendant must provide evidence establishing that it is more likely than not that the amount in controversy requirement is satisfied." *See Ronquillo v. BMW of N. Am., LLC*, No. 3:20-CV-1413-W-WVG, 2020 WL 6741317, at *3 (S.D. Cal. Nov. 17, 2020) (quoting *Sanchez*, 102 F.3d at 404) (citing *Matheson*, 319 F.3d at 1090); *see also Zawaideh v. BMW of N. Am., LLC*, No. 17-CV-2151 W (KSC), 2018 WL 1805103, at *2 (S.D. Cal. Apr. 17, 2018) (concluding that, as with punitive damages, "[r]ather than simply assume that because a civil penalty is available, one will be awarded, the defendant must make some effort to justify the assumption by, for example, pointing to allegations in the Complaint suggesting award of a civil penalty would be appropriate, and providing evidence—such as verdicts or judgments from similar cases—regarding the likely amount of the penalty.").

BMW contends that a civil penalty of two times Plaintiffs' actual damages should be included in the amount in controversy because Plaintiffs pray for the full civil penalty and allege that BMW acted "willfully." (*See* Opp'n at 11 (citing Compl. ¶ 55 & Prayer for Relief ¶ 5).) "Other than referring to Plaintiff[s'] allegation that [BMW] acted willfully, however, [BMW] provides no support for the likelihood that a civil penalty based on its willfulness would actually be awarded in this case, or that the full civil penalty would be awarded." *See Savall v. FCA US LLC*, No. 21CV195 JM (KSC), 2021 WL 1661051, at *3 (S.D. Cal. Apr. 28, 2021). "Moreover, even Plaintiff[s'] lengthy Complaint alleges only

that [BMW]'s obligations were willfully violated because, in effect, [BMW] . . . failed to promptly provide Plaintiff[s] with satisfactory redress." *Id.*; *see also* Compl. ¶¶ 38–39, 49–51. "If such boilerplate allegations were sufficient to defeat remand, then virtually any Song-Beverley action involving a new vehicle purchase would remain in federal court." *See Savall*, 2021 WL 1661051, at *3. As Defendant's counsel admitted at the hearing, a jury could decide to award a civil penalty or it could not; however, for purposes of the instant Motion, the burden of establishing that it is more likely than not that a jury will award a civil penalty is on Defendant. The Court therefore concludes that BMW has failed to meet its burden of establishing by a preponderance of the evidence that the civil penalty authorized under the Act should be included in the amount-in-controversy. *See, e.g., id.*; *cf. Zeto v. BMW of N. Am., LLC*, No. 20-CV-1380-GPC-KSC, 2020 WL 6708061, at *5 (S.D. Cal. Nov. 16, 2020) (including civil penalties in amount-in-controversy where the "[d]efendant submitted a detailed breakdown of how the civil penalties were calculated, backed up by passages from the complaint and other evidentiary exhibits").

Finally, as for attorneys' fees, contrary to Plaintiffs' assertion, (*see* Mem. at 13–14; Reply at 5; Oral Argument), "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (citing *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018)). "The defendant retains the burden, however, of proving the amount of future attorneys' fees by a preponderance of the evidence." *See id.* at 927–28 (quoting *Fritsch*, 899 F.3d at 788). "The type of evidence that courts have considered to estimate reasonable future attorney's fees include a percentage of economic damages alleged, fee awards in similar cases, and estimates of the number of hours that will likely be required to litigate the pending case multiplied by the opposing counsel's hourly rate." *Peck v. First Student, Inc.*, No. 3:17-CV-0863-SI, 2017 WL 3288116, at *3 (D. Or. Aug. 2, 2017) (collecting cases). The district court retains discretion, however, "to determine whether defendants have carried their burden of proving future attorneys' fees, and to determine when a fee estimate

is too speculative because of the likelihood of a prompt settlement." *See Fritsch*, 899 F.3d at 795.

Here, Plaintiffs allege that they are entitled to attorneys' fees under the Act, (*see* Compl. ¶¶ 54, 67, 79), which explicitly authorizes the recovery of attorneys' fees. *See* Cal. Civ. Code § 1794(d). The Court therefore must include Plaintiffs' prospective attorneys' fees in the amount in controversy, so long as BMW's estimate is reasonable given the preponderance of the evidence. *See Arias*, 936 F.3d at 922; *Fritsch*, 899 F.3d at 794. To meet its burden, BMW cites cases in which "substantial" attorneys' fees were awarded, (*see* Opp'n at 16 (citing *Gezalyan v. BMW of N. Am., LLC*, 697 F. Supp. 2d 1168, 1171 (C.D. Cal. 2010) ($50,404.34); *Goglin v. BMW of N. Am., LLC*, 4 Cal. App. 5th 462, 470 (2016) ($185,214.19))), and introduces evidence of billing rates for Plaintiffs' counsel, (*see id.* at 16 ($250 to $450 per hour); *see also* Oaks Decl. ¶ 7; ECF Nos. 10-7, 10-8), as well as fees Plaintiffs' counsel has been awarded in other cases. (*See* Opp'n at 16 ($131,427.50, $201,698.50, $69,885); *see also* Oaks Decl. ¶¶ 6–7; ECF Nos. 10-6–10-8.) BMW also "anticipates that Plaintiffs' counsel will bill *at least* 100–120 hours litigating this matter (inclusive of appearances, discovery, pleading and motion practice, and trial preparation)." (*See* Opp'n at 16 (emphasis in original).) BMW therefore concludes that the "potential attorneys' fees sought in this matter [come] to $45,000.00, *at minimum*." (*See id.* (emphasis in original).)

Based on the cases BMW cites, however, BMW appears to assume that this case will involve protracted litigation. *See, e.g.*, *Gezalyan*, 697 F. Supp. 2d at 1169–70 ($50,404.34 for fourteen months of active litigation resulting in repurchase of vehicle from the plaintiff); *Goglin*, 4 Cal. App. 5th at 465–69 ($185,214.19 for fifteen months of active litigation, including discovery, resulting in settlement); ECF No. 10-6 at 1–3 ($131,427.50 for two years of litigation culminating in jury trial); ECF No. 10-7 ($201,698.50 for nearly two years of litigation culminating in jury trial); ECF No. 10-8 ($69,885 for three years of

/ / /

/ / /

litigation culminating in jury trial).[5] In the Court's—and undoubtedly the Parties'—experience, the vast majority of civil cases settle well before trial, particularly those involving lower stakes and relatively straightforward legal issues. At the hearing, BMW contended for the first time that, while most cases of this type settle, the "vast majority" of those litigated by Plaintiffs' counsel proceed to arbitration or trial. Because BMW failed to address this issue in its Opposition, however, there is no evidence before the Court supporting this contention.

While a defendant may meet its burden to establish a reasonable estimate of attorneys' fees by identifying awards in other cases, those cases must be similar enough to the case at hand that the court can conclude that it is more likely than not that the plaintiff may incur a similar fee award. *See, e.g.*, *Cruz v. Mercedes-Benz USA, LLC*, No. 220CV05167ODWJCX, 2020 WL 5797917, at *3–4 (C.D. Cal. Sept. 29, 2020); *Peck*, 2017 WL 3288116, at *3. Here, BMW "has failed to establish why this action is similar to th[e selected] . . . cases," *Cruz*, 2020 WL 5797917, at *3, which involve extraordinary fee awards for cases under the Act. BMW "does not contend that this action will likely be litigated like the . . . cases cited, nor does it provide support for the notion that this case could span up to two [or even three] years." *See id.* "Because [BMW] only offers conclusions and speculative assumptions to substantiate its attorneys' fees calculation, [BMW]'s statements fall short of the required summary judgment-type evidence." *See id.* Given BMW's failure to substantiate a reasonable estimate of the attorneys' fees Plaintiffs may incur in this case, the Court declines to consider those fees as part of the amount in controversy.

/ / /

/ / /

---

[5] Where BMW has provided only the judgment as an exhibit to the Oak Declaration, the Court has taken judicial notice of the underlying docket to determine when the action was filed and when the jury returned a verdict. *See Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1116 (C.D. Cal. 2010) ("[A] court 'may take judicial notice of matters of public record, including duly recorded documents, and court records available to the public through the Pacer system via the internet.'" (quoting *C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1123, 1138 (E.D. Cal. 2009)) (citing *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002))).

In sum, BMW has failed to meet its burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000. The Court therefore concludes that it lacks subject-matter jurisdiction over this action.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion to Remand (ECF No. 6) and **REMANDS** this action to the Superior Court of California, County of San Diego. The Clerk of Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: September 23, 2021

Honorable Todd W. Robinson
United States District Court